**UNITED STATES of America**

v.

**Robert P. ANDERSON, N. B. Burt, Ralph E. Crandell, E. L. Harmon, Karl Lagnefors, Earl W. Senn, Defendants.**

**Civ. A. No. 7860.**

United States District Court
D. Colorado.

Oct. 15, 1963.

Arthur L. Fine, Asst. U. S. Atty., for Lawrence M. Henry, U. S. Atty., for Dist. of Colorado, for the United States.

Benjamin E. Sweet, Denver, Colo., for defendants Robert P. Anderson, N. B. Burt, Ralph E. Crandell and Earl W. Senn.

No appearance for defendants E. L. Harmon and Karl Lagnefors.

DOYLE, District Judge.

On July 16, 1963, plaintiff was ordered, pursuant to Rule 34, F.R.Civ.P., to produce files of the Small Business Administration and the Securities and Exchange Commission in the Durox Reorganization. The United States has submitted to the Court, pursuant to a stipulation between the parties, certain documents deemed by it to be privileged and exempt from disclosure. Pursuant to a further order of the Court, plaintiff has filed an additional memorandum in which it has attempted to categorize the docu-

ments so as to clarify its position in regard to its claim of privilege. Rather than the two categories originally urged by plaintiff, the documents are now divided into five categories:

*First*, are the documents consisting of communications made between February 4, 1959 and May 9, 1962 between the Small Business Administration Regional Director and Regional Counsel regarding the manner in which the litigation of the proceeding was to be handled; communications between the Loan Administration Section and Regional Counsel relating to recommendations as to the handling of Small Business Administration's security; communications between Regional Counsel and the Regional Director as to the handling of the payment of Small Business Administration's bid and as to advice on handling similar situations. As to this category, plaintiff maintains that the attorney-client privilege exempts the documents from disclosure.

The *second* category are memoranda between Small Business Administration counsel, written between October 29, 1959 and March 7, 1962, concerning legal issues involved in the Durox proceeding. This is alleged to be exempt under the "work product" doctrine.

The *third* category consists of correspondence between general counsel and regional counsel of Small Business Administration, covering the period from February 5, 1959 to February 23, 1962 evaluating the developments in the proceedings. This is claimed to be part of the work product of these attorneys.

The *fourth* category consists of memoranda prepared by Small Business Administration regional counsel for their files between January 28, 1959 and May 11, 1962, largely summarizing discussions and evaluating them. This too, is claimed to fall under the "work product" exemption.

The *fifth* category consists of correspondence between Small Business Administration attorneys and the Depart-ment of Justice attorneys, covering the period between February 12, 1959 and February 12, 1962, concerning efforts to co-ordinate the actions of the United States Attorney's office with the actions of the Small Business Administration counsel, the Justice Department, and the Securities and Exchange Commission. Again, it is asserted that these documents are exempt from discovery under the "work product" doctrine.

Although some of the documents do not fit exactly under the categories in which they are filed, they all bear a relation to the formulation of Small Business Administration policies in pursuing its course of action as a secured creditor in the Durox reorganization proceeding. They also reveal a conflict of policies between the Small Business Administration and the Securities and Exchange Commission in regard to the trustee's plan of reorganization and to the purchase of the security property at the liquidation sale.

Defendants, who are guarantors of a note held by Small Business Administration, are attempting to establish facts showing that they were released from their obligation either: 1) because Small Business Administration applied the balance due on the note to the purchase of the secured property; or 2) that the amount which the government claims is a deficiency due on the note is not really a deficiency but the cost of the Chapter X proceedings which Small Business Administration wrongfully paid, in effect estopping the government from going against defendants. The government has moved for summary judgment, which motion was denied with leave to renew it at a later time.

It does not appear that the issue has been decided as to whether a defendant in a civil action may obtain discovery against the government in connection with a note assigned to the government in pursuance of housing activities and contained in the government's files. However in this case, the only documents

sought to be discovered are those in which another element, that of protection of attorneys' papers and letters, is involved. At least for the purposes of this case, it can be assumed that the discovery rules of the Federal Rules of Civil Procedure are fully applicable to the United States. See 4 Moore's Federal Practice ¶ 26.25 [2], 1545.

*Documents within the work-product rule*

■ As set forth in the case of Hickman v. Taylor, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451, the work product of an attorney is not subject to disclosure through discovery procedures except in the case where the party asking for disclosure shows that the situation "is a rare one having exceptional features which make the disclosure necessary in the interests of justice," 4 Moore's Federal Practice ¶26.23 [8–1], page 1381, or, in other words, where there is a showing of "very good cause." Thus the first two issues presented are: 1) whether the documents claimed to be work product are in fact the work product of the attorneys; and 2) whether there is a sufficient showing of cause to overcome the general exclusion of work product.

In the Hickman case, supra, the Supreme Court wrote, 329 U.S. at page 509, 67 S.Ct. at pages 392–393, 91 L.Ed. 451:

"* * * We are thus dealing with an attempt to secure the production of written statements and mental impressions contained in the files and the mind of the attorney Fortenbaugh without any showing of necessity or any indication or claim that denial of such production would unduly prejudice the preparation of petitioner's case * * *. For aught that appears, the essence of what petitioner seeks either has been revealed to him already through the interrogatories or is readily available to him direct from the witnesses for the asking.

* * * * * *

"* * * Here is simply an attempt, * * * to secure written statements, private memoranda and personal recollections prepared or formed by an adverse party's counsel in the course of his legal duties. * * * Not even the most liberal of discovery theories can justify unwarranted inquiries into the files and the mental impressions of an attorney."

■■ But the doctrine is not limited to "written statements, private memoranda and personal recollections prepared or formed * * * in the course of his legal duties." The immunity also applies to material obtained by a lawyer during the preparation of his case, and investigation reports prepared by an attorney in a corporate legal department, although completed before action is under way, were held to be prepared "with an eye toward litigation" and fall within the work-product rule. Connecticut Mutual Life Ins. Co. v. Shields, 16 F.R.D. 5 (S.D.N.Y.1954). The fact that the memoranda in the instant case were prepared by "house counsel," who represent only one agency rather than a variety of clients, is not a determinative factor. See Vilastor-Kent Theater Corp. v. Brandt (S.D.N.Y.1956) 19 F.R.D. 522.

■ The item does not become a work product simply because its author was a member of the bar. It must be the result of a basic professional relationship between the lawyer and the party, or it must have required the training, skill and knowledge of a lawyer, or the essential integrity implicit in the lawyer-client relationship. See Barron and Holtzoff Federal Practice and Procedure (1961), Vol. 2A, p. 135.

■ The documents in the present case, insofar as they consist of memoranda of counsel and between counsel, are generally composed of legal conclusions, impressions, arguments, and reports to co-counsel on meetings and discussions or reports of hearings in court. They were generally prepared in view of the

pending litigation in connection with the Durox reorganization. Although the subject of the dispute may be characterized as revolving around business transactions, the items contained in the memoranda are primarily legal, and as such can be classified as the work product of the government attorneys, exempt from disclosure in the absence of a showing of very good cause.

■■■■ "Where relevant and non-privileged facts remain hidden in an attorney's file and where production of those facts is essential to the preparation of one's case, discovery may properly be had. * * * " Hickman v. Taylor, supra, 329 U.S. pp. 511, 512, 67 S.Ct. pp. 393–394, 91 L.Ed. 451. The decisions as to what constitutes a sufficient showing of necessity or justification are difficult to generalize. Inability to obtain the information through depositions, hostility of witnesses, and possibly lapse of time, may be sufficient. Barron and Holtzoff, Federal Practice and Procedure Volume 2A, pp. 145–153. In the instant case, defendants seek discovery only in the normal pursuit of preparing their case. Although they do not know the legal reasons for the actions taken by the plaintiff, they have shown no need to know; the actions themselves are a matter of public record, and if legal advice were given in error or in bad faith, it would serve no good purpose for the defendant to know this. It might enable him to embarrass the plaintiff's counsel but this is not good cause. The conflicts of advice contained in the memoranda are admitted by the plaintiff. This does not rule out obtaining relevant information contained in the documents through other discovery processes. See 4 Moore's Federal Practice, ¶ 26.23 [8–3], p. 1435. For example the, fact that one is an attorney creates no immunity from depositions. McCall v. Overseas Tankship Corp., 16 F.R.D. 467 (D.C.N.Y.1954). In view of the lack of showing of a greater-than-normal necessity by defendants, or that the information can not be obtained through other channels, plaintiff's objections to production of groups 2, 3, 4 and 5 are sustained except insofar as they were not prepared with an eye toward this specific litigation, or concern themselves with business, rather than legal matters.

### The attorney-client privilege—Communications between administrators and lawyers

It is contended by defendants that the government is attempting to abuse the attorney-client privilege by funneling documents, otherwise unprivileged, through the hands of attorneys in order to prevent their disclosure. Defendants rely on the recent case of Radiant Burners, Inc. v. American Gas Association (7th Cir., 1963) 320 F.2d 314, which contains an excellent discussion of the privilege and its history. There the plaintiff argued that "Most of the commentators agree that the doctrine even as applied to individuals (and the issue in the case was whether or not the doctrine should apply to corporations) should be abolished and would be, but for the hue and cry that lawyers would raise about such denigration of their prime status symbol." The Circuit Court declined the "invitation" to limit the privilege, and held that the privilege does not allow such funneling. The Court went on to say, 320 P.2d at page 324:

"In balancing the competing goals of the free and unobstructed search for the truth with the right and absolute necessity for confidential disclosure of information by the client to its attorney to gain the legal advice sought thereby, the courts will realize that they are not dealing with a blanket privilege. The limitation surrounding any information sought must be determined for each document separately considered on a case-by-case basis. * * * "

■■■ The documents constituting the first category are communications between administrative personnel and the

legal counsel of Small Business Administration and the United States Attorney's office. In general, they meet the criteria set out in United States v. United Shoe Machinery Corp., (D.Mass.1950), 89 F. Supp. 357: the documents are privileged insofar as they do not comment or report on information coming from persons outside the government or from public documents, or are summaries of conferences held with or in the presence of outsiders, and were produced with the idea of obtaining or receiving legal advice.

The documents have been analyzed in detail. Appendix II identifies briefly the documents which are privileged. It may be that counsel for defendant will wish, in view of the nature of these documents, to show "very good cause" for exposure of some or all of these documents. Any such specific showing must be made as to particular documents and must be filed within fifteen (15) days after receipt of this memorandum. At the termination of that time period these rulings will be final unless a specific challenge is filed.

## APPENDIX I

*DOCUMENTS NOT PRIVILEGED*

Memo, May 9, 1962:

Summary of conference held in presence of outsiders.

Memo, February 2, 1960:

Not prepared with an eye toward this case.

Letter, February 5, 1959:

Concerned with non-legal matters.

Memo, March 9, 1962:

Not prepared with an eye toward this case.

Memo, June 5, 1961:

Not prepared with an eye toward this case.

Letter, November 15, 1961:

Summary of communication to outside party.

Memo, March 1, 1960:

Summary of meeting held in the presence of outsider (Chadwell).

## APPENDIX II

*SUMMARY OF DOCUMENTS WHICH ARE PRIVILEGED*

*GROUP I:*

1. Memo, February 4, 1959:
   To Regional Director from General Counsel: re holding up of referral of Durox matter to Department of Justice pending receipt of copies of trust deed and guarantees. Requests advice on intention to foreclose.

2. Memo, March 27, 1959:
   To Regional Director from General Counsel: re course of action to be followed in connection with issuance of trustee's certificates, and as to whether Regional Counsel should consider foreclosure or suit against the guarantors. Suggests consideration be given to course of action in Durox.

3. Memo, July 16, 1959:
   To Regional Director from General Counsel: re allowing the Trustee to examine Small Business Administration's copy of the borrower's loan application. Authorizes course of action in Durox matter.

4. Memo, August 10, 1959:
   To Regional Director from General Counsel: re coordination of Small Business Administration and Securities and Exchange Commission policy and concurring with S.B.A.'s view of Durox matter. Advises course of action.

5. Memo, November 19, 1959:
   To Regional Director from General Counsel: re release of appraisal data and introduction of evidence as to the valuation of a debtor's property, giving interpretation of Section 102.3 of S.B.A. Rules as published in 23 F.R., and as applies to Durox reorganization.

6. Memo, January 21, 1960:
To Regional Director from General Counsel: re interpretation of Rule 102.3 and directing course of action for Regional Office to follow in making data available to support S.B.A. position in Durox proceeding.

7. Letter, March 7, 1960:
To General Counsel from Regional Director advising receipt of memo of March 1 and of contacting United States Attorney and advising of United States Attorney's intentions as to meeting with trustee and position on plan of reorganization (hereinafter called "Plan.").

8. Memo, October 28, 1960:
To Regional Director from General Counsel requesting information and views of Loan Liquidation personnel and Regional Counsel, so as to assist General Counsel in making a recommendation to the Department of Justice as to how to vote on the Plan.

9. Memo, December 15, 1960:
To Regional Counsel from Acting Chief of Loan Administration Section, requesting preparation of annual affidavits to be filed in order to maintain S.B.A.'s lien position; also contains information as to related past actions.

10. Memo, January 11, 1961:
To Regional Director from General Counsel concerning recommendations as to course to follow in considering appeal of the Order confirming the Plan, and requesting views of Regional Office on matter of trustee payment of costs and expenses of administration.

11. Memo, January 16, 1961:
To Regional Director from General Counsel, directing Regional Counsel to look into the matter of filing additional objections or exceptions to the plan, in order to assist the United States Attorney.

12. Memo, January 27, 1961:
To Regional Director from General Counsel, referring to memorandum of January 17, 1961 by Eddy, Acting Regional Counsel. Recommendation as to taking action against guarantors; explaining change of circumstances since first demand upon guarantors; explanation of further steps to be taken and further information sought; interpretation of Order as to whether administrative expenses are entitled to payment out of sale of S.B.A. collateral, and consequent course of action to follow.

13. Memo, November 7, 1961:
To Regional Director from General Counsel requesting information as to method of payment of bid price in the event S.B.A. were permitted to bid on the Durox property.

14. Memo, November 29, 1961:
To Regional Director from General Counsel. Citation of cases concerning whether S.B.A. can collect interest beyond the filing date in the Durox matter.

15. Memo, January 26, 1962:
To Chief, Loan Administration Section from Regional Counsel. Concerning whether the property can be sold before title is obtained and the price which can be quoted as the sale price.

It is submitted that all of the above documents are exempt from disclosure under the attorney-client privilege as each was prepared by or for plaintiff's General or Regional Counsel, requesting or giving legal opinions or information upon which to form legal opinions, and each consists of information which was not disclosed to a third person or in a public document.

*GROUP II:*

1. Memo, October 29, 1959:
   To Regional Counsel from Assistant Regional Counsel. Document consists of a memorandum brief on the subject of holding guarantors liable under Colorado law, in view of the issue arising in the Durox case.

2. Memo, January 4, 1962:
   To Regional Counsel from Assistant Regional Counsel. Summary of conference requested by attorney for the Trustee in the office of the United States Attorney discussing tentative agreement on items of administration expense so as to reach a conclusion as to how much S.B.A. should pay the Trustee so that title to the Durox property can be transferred to S.B.A.

3. Memo, March 7, 1962:
   To Regional Counsel from Assistant Regional Counsel. Summary of Ninth Circuit case relating to mortgage deficiencies and guarantors' liabilities.

   The above documents were prepared in light of the Durox proceeding, and are private memoranda and personal recollections prepared in the course of legal duties, and as such are within the Hickman doctrine.

*GROUP III:*

1. Memo. Summary of telephone call from Regional Counsel to Assistant General Counsel, April 10, 1959. Obtaining permission to use a witness to testify before the Federal Court, and advice as to method of presenting evidence.

2. Memo, May 1, 1959:
   To General Counsel from Regional Counsel. Presenting issue facing United States Attorney in attempting to expedite the case and requesting advice as well as recommending a course of conduct.

3. Memo, July 1, 1959:
   To General Counsel from Regional Counsel. Requesting permission from Administrator to show document to Trustee.

4. Memo, July 31, 1959:
   To General Counsel from Regional Counsel. Bringing to General Counsel's attention the developing conflict in policy between S.B.A. and S.E.C. over the Durox Plan of Reorganization.

5. Memo, January 6, 1960:
   To Assistant General Counsel from Regional Counsel. Forwarding copy of the Plan, summarizing, analyzing and opposing it. Consideration of the alternative of the Trustee's taking action against the Board of Directors compared with the alternative of suit against the guarantors; containing arguments for and against each alternative with recommendations as to the course which would be most beneficial for S.B.A. and other parties.

6. Memo, January 12, 1960:
   To Assistant General Counsel from Regional Counsel. Requesting authority to allow United States Attorney to release "certain data," not otherwise identified, from S.B.A. files to substantiate United States Attorney's claim of error in Trustee's report.

7. Memo, March 9, 1960:
   To General Counsel from Acting Regional Counsel. Summary of meeting between S.B.A. personnel, United States Attorneys, and and the Trustee and his attorney, at which meeting S.B.A.'s opposition to the Plan was discussed, revealing a fact controversy as to statements made by Regional Counsel concerning S.B.A.'s intention to sue the guarantors.

8. Memo, March 28, 1960:

   To General Counsel from Acting Regional Counsel. Requesting information as to how far it is customary to go in allowing the Trustee to inspect S.B.A. files, in view of a request for production of the entire Durox file.

9. Memo, April 4, 1960:

   To General Counsel from Acting Regional Counsel. Summary of Hearing on the Plan of Reorganization held March 23, 24, 25, and 31, 1960, before the Referee in Bankruptcy. Enclosure of a list of documents furnished to the trustee's attorney for use at the hearing, containing a record of which exhibits were introduced in evidence.

10. Memo, April 4, 1960:

    To General Counsel from Assistant Regional Counsel. Notifies General Counsel of an offer to buy three autoclaves and procedure to follow in retaining S.B.A.'s security in these. Also a discussion of a plea to reconsider a decision regarding the taking of action against the guarantors.

11. Memo, August 8, 1960:

    To Assistant General Counsel from Acting Regional Counsel. Forwarding a copy of notice of a hearing of objections to the Plan on August 30, 1960 and expressing objections to the holding of the hearing.

12. Memo, August 8, 1960:

    To Assistant General Counsel from Acting Regional Counsel. Further information on the above hearing, and notification of the inability of the United States Attorney to be available. Request for Assistant General Counsel Darden to attend.

13. Memo, October 25, 1960:

    To General Counsel from Assistant Regional Counsel. Requesting comments and results of research concerning S.B.A.'s position on the Plan, and emphasizing need for expedition.

14. Memo, October 31, 1960:

    To General Counsel from Assistant Regional Counsel. Forwarding of formal Rejection of Amended Plan of Reorganization for signature by the Secretary of the Treasury, with modification of reasons for urging rejection, and request for expedition.

15. Memo, November 1, 1960:

    To General Counsel from Assistant Regional Counsel. Advising General Counsel of the signing of an agreement and payment of earnest money to the Trustee by the Washington-ytong Company and discussion of financial information relating to the company. Also notification of service with the Trustee's Petition for Appraiser.

16. Telegram, December 7, 1960:

    To Acting Regional Director from Assistant General Counsel Darden. Notification of possible inability to attend hearing.

17. Memo, November 29, 1960:

    To General Counsel from Assistant Regional Counsel. Requesting presence of Darden at hearing at which assets of debtor might be sold or the debtor thrown into straight bankruptcy, or the case dismissed.

18. Memo, January 6, 1961:

    To General Counsel from Assistant Regional Counsel. Requesting advice in light of confirmation of Plan.

19. Memo, January 12, 1961:

    To Assistant General Counsel from Assistant Regional Counsel.

Forwarding copy of Plan and calling attention to amendments. Requests information with regard to appeal.

20. Memo, January 13, 1961:

To Assistant General Counsel from Assistant Regional Counsel. Request for General Counsel's office to prepare S.B.A.'s objections for filing.

21. Memo, January 17, 1961:

To General Counsel from Assistant Regional Counsel. Summary of conference held this date with United States Attorneys regarding the proper time to raise the issue of administrative expenses, and whether there is any reason for a departure from S.B.A.'s course of action.

22. Letter, February 17, 1961:

To Assistant General Counsel from Assistant Regional Counsel. Forwarding copies of Order and Amendment to Amended Plan granted by Judge Arraj, and consideration of objections to the proceeding.

23. Memo, April 7, 1961:

To Assistant General Counsel from Assistant Regional Counsel. Advising General Counsel of notification received of an intent to request the Court to postpone the hearing set for April 11.

24. Memo, April 13, 1961:

To General Counsel from Assistant Regional Counsel. Comments on groups represented in the proceedings.

25. Telegram, November 9, 1961:

To General Counsel from Regional Director by Regional Counsel. Advising General Counsel that United States Attorney is requesting court advice regarding application of the balance due and notification of S.B.A. position on each payment of the bid.

26. Telegram, January 10, 1962:

To Regional Counsel from Assistant General Counsel. Requesting advice regarding preservation of rights of appeal, settlement, excessiveness of fees.

27. Teletype, January 11, 1962:

To General Counsel from Regional Counsel. Reference to telegram of January 10, promising referral and advice later. Also advises of agreement regarding payment of monies at this time to transfer trustee's deed at stated amount.

28. Teletype, February 2, 1962:

To General Counsel from Regional Counsel. Notification and itemization of fees ordered by the Court, with information as to the preparation of an appeal and action against guarantors. Requests instructions.

29. Teletype, February 6, 1962:

To General Counsel from Regional Counsel. Correction of teletype of February 2, 1962.

30. Memo, February 14, 1962:

To General Counsel from Regional Counsel. Advising of steps taken looking toward appeal of the Order setting fees and expenses and settlement with the guarantors.

31. Telegram, February 14, 1962:

To General Counsel from Regional Counsel. Advising of order of February 8, 1962, confirming sale of debtor's assets to S.B.A. provisions of the order including the Trustee's power to disburse.

32. Memo, February 23, 1962:

To General Counsel from Regional Counsel. Advising that Regional Office is awaiting receipt of check from the Office of Finance and Accounts, and further consideration of questions relating to bookkeeping to be done with regard to the charge-off of purchase monies, interest on the loan, and items of reimbursement.

The above memoranda, with the exception of the telegram of November 9, 1961, are communications between counsel, primarily legal in nature, and in effect are reports of lawyers to and from co-counsel. Absent a showing of very good cause, the documents are immune from discovery procedures under the Hickman doctrine. The telegram of November 9, 1961, if not considered to be work-product, falls under the attorney-client privilege.

*GROUP IV:*

1. Memo, January 28, 1959:

   To files from Assistant Regional Counsel. Summary of meeting of January 27, 1959 between counsel and officials of S.B.A. and representatives of Durox, concerning liquidation of Durox assets in payment of the S.B.A. loan. Discussed were the valuations of Durox assets and proposed methods of liquidation.

2. Memo, January 28, 1959:

   To files from Assistant Regional Counsel. Summary of phone call from Mr. Crandell, attorney, secretary and member of board of directors of Durox concerning meeting of stockholders of Durox, during which a new board of directors and chairman were installed by a stockholders group. Summary of discussion regarding Crandell's request for S.B.A. to take "some action."

3. Memo, March 12, 1959:

   To files from Regional Counsel. Summary of meeting held March 11, regarding prospective opposition to a petition of the Trustee for Court authority to issue Trustee's certificates. Further consideration of S.B.A. rights against the guarantors and whether or not liquidation would be a wise policy.

4. Memo, February 11, 1960:

   To files from Assistant Regional Counsel. Concerning a communica-tion from Assistant United States Attorney considering the possibility of a new Plan of Reorganization being submitted by the Trustee.

5. Memo, February 12, 1960:

   To files from Acting Regional Counsel. Concerns discussion of Plan between S.B.A. Regional Director, Assistant United States Attorney and attorney for S.E.C. Considered S.E.C. view and a possible conflict in views with S.B.A. Arranged for discussion of the Plan at higher levels of government.

6. Memo, March 29, 1960:

   To files from Acting Regional Counsel. Concerning phone conversation regarding subpoena served on Regional Director on March 28. No action taken.

7. Memo, April 28, 1960:

   To files from Acting Regional Counsel. Summary of informal meeting in office of Referee on April 26. The meeting was attended by some of the attorneys representing interested parties. Discussion with Referee of authorization of sale of Durox property and of distribution of proceeds of sale. Discussion of possibility of forgiving portion of interest due S.B.A. and of the likelihood of future agreement of the parties concerned on a plan of liquidation.

8. Memo, April 29, 1960:

   To files from Acting Regional Counsel. Summary of conference with U. S. Attorney concerning turning Durox matter over to new United States Attorney, and resulting problems.

9. Memo, May 18, 1960:

   To files from Acting Regional Counsel. Summary of meeting held May 16 between Mr. Clark, Board, Torrington, Kindall and Acting Regional Counsel. Two questions were considered: re amortization of S. B.A.'s loan and S.B.A.'s prospective

support of a motion that an appraisal be made.

10. Memo, May 26, 1960:

To files from Assistant Regional Counsel. Concerns hearing before Referee at which pros and cons of representation by a certain law firm of certain creditors. Also considered was the Referee's feelings on the Plan. No decisions reached.

11. Memo, July 20, 1960:

To files from Acting Regional Counsel. Summary of meeting held this date in office of attorney for creditors, with attorney for unsecured creditors, a guarantor, the United States Attorney and Assistant General Counsel. Discussion was in reference to how these persons should vote on the Plan and of the priority attaching to S.B.A.'s claim, as well as S.B.A.'s position on a sale by the Trustee. Discussion of stipulation of expenses, and after the meeting, strategy for S.B.A. to follow in regard to the stipulation.

12. Memo, July 22, 1960:

To files from Acting Regional Counsel. Summary of unofficial pre-trial conference held this date concerning general agreement to put the assets of Durox up for sale as soon as possible and also the appointment of an appraiser and determination of an approximate time for actual sale of the corporate assets.

13. Memo, July 27, 1960:

To files from Acting Regional Counsel. Concerning phone call from Judge Arraj, who was giving notice of a hearing in the near future.

14. Memo, November 1, 1960:

To files from Assistant Regional Counsel. Summary of a meeting held this date with Trustee, attorney for Trustee, and S.B.A. officials. Discussed was a desire by the Trustee to enlist S.B.A.'s acceptance of the Plan.

15. Memo, November 2, 1960:

To files from Assistant Regional Counsel. Summary of a meeting held this date in chambers of Judge Arraj with attorney for Trustee, the United States Attorney and Assistant Regional Counsel for S.B.A. Discussed fees for Trustee and expenses of administration. Attorney for Trustee expressed a fee-expense figure.

16. Memo, November 10, 1960:

To files from Assistant Regional Counsel. Summary of a tentative report made by Trustee prior to hearing in chambers of Referee. Consideration of creditors by classes and their positions in regard to the Plan.

17. Memo, November 10, 1960:

To files from Assistant Regional Counsel. Summary of the hearing before Referee regarding appointment of appraiser, and the fees which the appraiser might charge.

18. Memo, December 19, 1960:

To files from Assistant Regional Counsel. Concerning hearing held this date in District Court on petition for a confirmation of the Plan and other petitions. Attorney for the guarantors stated the guarantors' views. Legal and practical aspects of the plan were considered. Attorney for the Trustee, attorney for the S.E.C. and United States Attorney expressed their views. The Court confirmed the re-amended Plan.

19. Memo, November 3, 1960:

To files from Assistant Regional Counsel. Summary of a phone call to Assistant General Counsel bringing Washington up to date on developments in the Durox matter. Washington advised that a decision had been reached on how to vote on the Plan.

20. Memo, February 2, 1961:

To files from Assistant Regional Counsel. Summary of phone call from attorney for Trustee, advising of vandalism losses at the Durox plant and suggestion of consideration of new financing or refunding by purchaser Ytong.

21. Memo, February 8, 1961:

To files from Assistant Regional Counsel. Summary of discussions with United States Attorneys on February 7 and 8, 1961 concerning liquidation. Time for appeal and deferral of action against the guarantors, and the legal effect of each, were discussed, as was the proposal by Trustee to set an upset price.

22. Memo, March 17, 1961:

To files from Acting Regional Counsel. Summary of hearing before Judge Arraj on amendment to the contract of sale to Ytong. The Court approved the amendment, and the writer discussed the effect of the amendment upon S.B.A.'s equities.

23. Memo, April 20, 1961:

To files from Assistant Regional Counsel. Summary of phone call from attorney for Trustee advising that payment had not been made by Ytong, and requesting a suggestion of an auctioneer.

24. Memo, May 8, 1961:

To files from Assistant Regional Counsel. Summary of meeting with Auctioneer, and discussion of Auctioneer's sales brochure.

25. Memo, July 7, 1961:

To files from Assistant Regional Counsel. Summary of hearing held this date before Referee on petition for appointment of appraiser and auctioneer. The Referee appointed an appraiser and an auctioneer, and the United States Attorney stated S.B.A.'s request allowing S.B.A. to bid, which was denied.

26. Memo, August 15, 1961:

To files from Assistant Regional Counsel. Summary of phone call from attorney for guarantors requesting information as to whether S.B.A. planned to bid and in what amount. He was informed that S.B.A.'s general rule was to bid the lesser of appraisal or loan balance.

27. Memo, November 17, 1961:

To files from Assistant Regional Counsel. Concerns hearing before Judge Arraj on confirmation of sale of Durox assets. Discussion of S.B.A.'s motion to substitute its mortgage lien for an outright cash bid. The Court granted the motion and an order confirming the sale to S.B.A.

28. Memo, February 8, 1962:

To files from Acting Assistant General Counsel. Summary of phone call from Assistant Regional Counsel and United States Attorney, during which termination of Court order requiring S.B.A. to make a deposit was discussed, as well as the amount of the deposit, appeal of the order allowing fees to the Trustee and attorneys, and an order requiring S.B.A. to receive conveyance of title simultaneously with the payment of the bid price.

29. Memo, February 9, 1962:

To files from Assistant Regional Counsel. Concerning conference call to General Counsel's office discussing perfection of appeal of order allowing fees, obtaining order of confirmation of sale, and the readying of legal action against the guarantors.

30. Memo, May 11, 1962:

To files from Attorney-Adviser to Chief of Loan Administration Section. Summary of meeting with Trustee and Attorney for Trustee regarding S.B.A.'s figures on total indebtedness and deficiency. The

Trustee went into detail showing expenses of administration. Also included in the memo are comments of counsel on S.B.A.'s claim for a deficiency against the guarantors.

The above memoranda to files are in the nature of "recorded memory" of the attorneys involved in the Durox proceedings, and similarly fall within the Hickman protection of "written statements, private memoranda, and personal recollections prepared or formed \* \* \* in the course of legal duties."

*GROUP V:*

1. Letter, February 12, 1959:
   To Assistant Attorney General from General Counsel, S.B.A. Concerning S.B.A. loan to Durox Corporation and the fact that the loan is delinquent. Enclosed were copies of the note, deeds of trust, and other pertinent agreements. The matter is referred to the Department of Justice.

2. Letter, February 19, 1959:
   To United States Attorney from Assistant Attorney General. Referring the claim of S.B.A. to United States Attorney for collection or foreclosure, suggesting immediate demand upon corporation and guarantors.

3. Letter, May 8, 1959:
   To Regional Counsel from United States Attorney regarding stipulation entered into by four of the six guarantors and comment as to the guarantors' liability.

4. Memo, January 12, 1960:
   To United States Attorney from Regional Counsel concerning alleged erroneous statements and improper inferences made in Trustee's report 167-1. This is a seven-page memorandum covering statements and inferences appearing in the report, based upon an examination of the report by Regional Counsel.

5. Letter, January 12, 1960:
   To Assistant United States Attorney from Regional Counsel. Requesting comments on appraisal report listed above (same date).

6. Letter, January 12, 1960:
   To Department of Justice from Assistant General Counsel. Concerning reorganization plan and its effect in requiring the government to look to the guarantors. Commenting upon legal implications.

7. Letter, December 27, 1960:
   To Department of Justice from United States Attorney. Enclosing copies of order approving contract and an order confirming Plan. Discussion of appeal of the orders.

8. Letter, January 6, 1961:
   To United States Attorney from Acting Assistant Attorney General. Acknowledging receipt of letter of December 27, and recommending further action.

9. Letter, February 10, 1961:
   To Department of Justice from General Counsel. Concerning request for deposit of checks received in settlement of losses due to vandalism. Also discussion of possible consequences from the setting of an upset price, and recommendation as to course of action to be followed by the United States Attorney in regard to collection of the proceeds by the Trustee and deposit in special account; opposition or modification of the Plan; and the order providing for allowance of fees and expenses.

10. Letter, February 20, 1961:
    To United States Attorney from Assistant Attorney General. Regarding the deposit of insurance proceeds in debtor's account and legal consequences thereof, and objection to further amendment of the Plan so as to provide for upset price and consequences thereof. Also included is advice as to course of action

**532**

in regard to the petition for allowance of fees and administrative expenses.

11. Memo, November 9, 1961:

To files from Assistant United States Attorney. Regarding presentation of pending petitions to the Court and ensuing conversation with the Court. Contains recollections of the Court's feelings as to when action should be taken on the various petitions.

12. Letter, December 21, 1961:

To Department of Justice from United States Attorney. Concerning S.B.A.'s position and its conflict with the position taken by the S.E.C. and calling the conflict to the attention of the Department of Justice.

13. Letter, February 12, 1962:

To Regional Counsel from Assistant United States Attorney. Requesting expedition in the preparation of a check in compliance with Court orders confirming sale of the debtor's assets to the S.B.A. and comments on S. B. A.'s motion to set a hearing on the matter of expenses and costs of administration.