**LSB INDUSTRIES, INC., and Subsidiaries and First Industries Capitol Corporation, Plaintiffs,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Internal Revenue Service, Defendants.**

No. CIV–80–1226–D.

United States District Court, W.D. Oklahoma.

Sept. 7, 1982.

Julian Kornfeld, Tom G. Parrott and Clarke L. Randall, Oklahoma City, Okl., for plaintiffs.

William S. Price, U.S. Atty., Oklahoma City, Okl., John J. McCarthy, Jr. (J. Brian Ferrel and Richard L. Switzer, Attys., Tax Div., Dept. of Justice, Washington, D.C., for defendants.

## ORDER

DAUGHERTY, District Judge.

The Plaintiffs and Defendants have filed cross-motions for summary judgment herein. Said motions are supported by briefs, and both sides have filed briefs in response to the opposing motions. A hearing has been conducted on both motions on timely notice. Rule 56, Federal Rules of Civil Procedure.

The instant case is brought under the Freedom of Information Act (FOIA), 5 U.S.C. § 552. The Plaintiffs requested the Defendants to disclose certain classes of documents related to a Federal tax investigation of the Plaintiff LSB Industries, Inc. Defendants released most of the documents requested but withheld five documents which are the subject of this lawsuit. The parties have stipulated that the Plaintiffs have exhausted their administrative remedies, thereby making this case ripe for review.

■ At the outset, the Court notes that the Defendants seek summary judgment dismissing this case for the reason, in part, that the Commissioner of Internal Revenue is an improper party defendant in an FOIA suit and that the Court lacks jurisdiction over the Commissioner. Like the Court in *Hamlin v. Kelley,* 433 F.Supp. 180, at 181 (E.D.Ill.1977), the Court concludes that this contention is frivolous, as the Commissioner is the responsible head of the agency responding to the FOIA request. The cases cited by the Defendants in support of their contention do not sustain their contention. In *Providence Journal Co. v. FBI,* 460 F.Supp. 778, at 782 n. 2 (D.R.I.1978), *reversed on other grounds,* 602 F.2d 1010 (1st Cir.1979), *cert. denied,* 444 U.S. 1071, 100 S.Ct. 1015, 62 L.Ed.2d 752 (incorrectly cited by Defendants), the Court merely held that the case would go forward only against the Department of Justice because "the extent of relief to be afforded in this case does not depend on the presence of the other named defendants . . ." Similarly, see *Ott v. Levi,* 419 F.Supp. 750 (E.D.Mo., E.D.1976) (also miscited by Defendants).

The Court concludes that both the Defendant Internal Revenue Service (IRS) and the Commissioner of Internal Revenue, who is sued herein by his official title and in his official capacity and not as an individual, may be considered the "agency" as that term is used in the jurisdictional provision of the FOIA, 5 U.S.C. § 552(a)(4)(B). It seems clear to the Court that the language of the FOIA, especially Section 552(a)(5), indicates that an "agency" is made up of its individual responsible "members."

Moreover, as the IRS itself is a defendant herein, a fact apparently acknowledged by

the Defendants in their brief by repeatedly referring to themselves in the plural, the motion to dismiss for failure to name a proper party defendant is without merit. For these and other reasons, the Court concludes that it should not dismiss the case on this ground.

The Defendants claim that all five of the documents involved herein are exempted from disclosure under the FOIA by Section 552(b)(5) (Exemption 5), which exempts:

> (5) inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency.

Exemption 5 is roughly analogous, though not identical, to the rules of discovery, *Mead Data Central, Inc. v. U.S. Dept. of Air Force,* 566 F.2d 242, at 252 (D.C.Cir.1977). It covers the attorney-client privilege, *Mead Data Central, Inc., supra, id.;* the attorney work product privilege, *N.L.R.B. v. Sears, Roebuck & Co.,* 421 U.S. 132, at 154, 95 S.Ct. 1504, at 1518, 44 L.Ed.2d 29 (1975); and the deliberative process privilege,. *Mead Data Central, Inc., supra,* 566 F.2d at 256.

Defendants claim that Exemption 5 applies to each document for multiple reasons. They claim the attorney-client privilege as to all documents, the attorney work product privilege as to all or parts of Documents 1, 2, 4, and 5; and the deliberative process privilege as to Documents 2 through 5. The Court considers these claims of privilege *seriatim.*

## ATTORNEY–CLIENT PRIVILEGE

The attorney-client privilege has been designed by the Courts to encourage clients to. confide in their attorneys with all information that might be relevant to the rendering of legal services. This purpose is effectuated by the privilege by preserving from disclosure such confidential communications. In its classic definition, it applies to communications from the client to the attorney, 8 Wigmore, *Evidence,* § 2292 (McNaughton, rev., 1961), but it clearly extends to confidential communications from the attorney to the client, where such communication is

based on confidential information provided by the client. *Mead Data Central, Inc., supra,* 566 F.2d at 254. The privilege applies where the client is a corporation and the attorney is in-house counsel, *Natta v. Hogan,* 392 F.2d 686, at 692 (10th Cir.1968), or where the client is the United States and its administrators and the attorney is either in the agency or in the Department of Justice, *United States v. Anderson,* 34 F.R.D. 518 (D.Colo.1963). Finally, the Court notes that the Supreme Court has recently abrogated the commonly used "control group" rule in determining what communications are subject to the attorney-client privilege in the corporate setting. *Upjohn Company v. United States,* 449 U.S. 383, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981), holding that even low level employees may make confidential communications to the corporation's attorney which are covered by the privilege.

The Defendants argue that all five of the disputed documents are covered in their entireties by the attorney-client privilege under these rules. The Plaintiffs, in opposition to the Defendants' motion for summary judgment and in support of their own, argue that the privilege is not applicable, as none of the documents contain information communicated to attorneys by clients with an expectation of confidentiality. The Plaintiffs rely on the rule cited above in *Mead Data Central, Inc., supra.* The Court agrees with the Defendants.

Documents 4 and 5 are memoranda of an IRS attorney memorializing the substance of two conferences, one occurring on April 21, 1976, and the other on May 24, 1976. The same persons were present at both meetings: two IRS attorneys, one IRS auditor, and the Chief and three Special Agents from the Intelligence Division of the IRS office in Oklahoma City. Both memoranda are entitled, "Subject: LSB Industries, Inc., pre-referral." Both memoranda deal with the IRS investigation of LSB Industries. The April memorandum, Document 5, begins with an assessment of the IRS's "litigating position" and deals with various aspects, including problems, of

the investigation. It contains information given by the agents to the attorneys regarding the status of the investigation. Clearly, this information was communicated for the purpose of soliciting the attorneys' advice as to how to proceed. It also records that advice. It refers to possible grand jury proceedings. The Court concludes that no part of Document 5 could be disclosed without disclosing confidential information communicated by the administrators to their attorneys.

Document 4 reflects that the May meeting was called to discuss a proposed grand jury investigation, that participants discussed the evidence already developed in some detail, that they discussed and assessed the status of the investigation, and that they did so with a view to informing counsel and obtaining advice. Document 4 records that advice. The Court concludes that no part of Document 4 could be disclosed without revealing communications communicated in confidence by the administrators to their attorneys.

Document 3 is a one-page memorandum to which an 11-page memorandum is attached. The one-page memo, dated November 1, 1976, is from "ARC-Intelligence, Southwest Region," the "ARC" referring to the Assistant Regional Commissioner for Intelligence from the IRS regional office, and is addressed to Regional Counsel for the Southwest Region. Its subject is stated to be a request for a grand jury proceeding in the matter of LSB Industries, Inc. and named others, and is in three paragraphs. The first paragraph states that a memorandum is attached from the Chief of the Intelligence Division in Oklahoma City requesting a grand jury. It also states that there is also attached a report on the background of the investigation from two special agents, which has the concurrence of the Acting District Director. The second paragraph refers to conversations between the Chief and a Tax Division (Justice Department) attorney regarding strategy to be taken before the grand jury. The third paragraph states in substance only that the Regional Commissioner concurs in the grand jury request. This one-page docu-

ment is clearly a confidential communication from a client to an attorney, and, as the information mentioned here was disclosed by the Defendants in the affidavit of Ewan D. Purkiss of the IRS, the Court concludes that the remainder of the one-page memo is covered by the privilege.

The attachment to Document 3 is the report of the special agents on the background of the LSB investigation. It is dated October 13, 1976, and is addressed from the special agents to the District Director, to the attention of the Chief of the Intelligence Division in Oklahoma City. It states that its subject is a request for grand jury proceedings. After an initial discussion of the background of the LSB investigation, it discusses and analyzes in detail certain transactions which its authors considered indicative of possible violations of the Internal Revenue Code. The Defendants appear to argue that solely because this memo was given or communicated to IRS attorneys, it should therefore be covered by the privilege as part of Document 3. However, *Fisher v. United States*, 425 U.S. 391, at 404, 96 S.Ct. 1569, at 1577, 48 L.Ed.2d 39 (1976) suggests otherwise. There, attorneys resisted disclosure of documents given them by their clients. The Court held that the documents were not covered by the attorney-client privilege because they had not been privileged from disclosure when in the hands of the clients. However, as indicated below, the Court concludes that the 11-page memo attached to Document 3 was privileged from disclosure under the deliberative process privilege when written and communicated to the District Director. Therefore, the Court concludes also that it is covered by the attorney-client privilege as it did not lose its original privilege when it was disclosed to the attorney in a confidential client communication.

Document 2 is a memorandum dated December 21, 1976, from the Chief of the Intelligence Division of the Oklahoma City District of the IRS to the IRS Assistant Regional Counsel, regarding the LSB Industries grand jury request. To this document is attached a one-page memorandum from

Assistant Regional Counsel to the Chief of the Intelligence Division in Oklahoma City requesting certain clarifications in the LSB matter. The memorandum itself restates counsel's questions and gives answers. The entire document is clearly covered by the privilege.

Document 1 is a five-page letter dated January 3, 1977, from the IRS Regional Counsel for the Southwest Region to the Acting Assistant Attorney General, Tax Division, Department of Justice. It names LSB Industries, Inc. and certain others as its subject and is entitled, "Request for Open-End Grand Jury Investigation." It requests the grand jury investigation, states who should be investigated, discusses and assesses the possible strategies of pursuing the case before the grand jury, describes the history of the investigation to date, and discusses the transactions involved and their essential elements in some detail. Document 1 is a communication clearly containing confidential information and seeking legal services. As a request from a U.S. Government agency to the Department of Justice for litigation services, it clearly is a communication from an agency client to its attorney. See 28 U.S.C. § 516. Further, the Court finds no waiver of the privilege by virtue of the sending of copies, as noted at the end of Document 1 to various IRS personnel involved in the LSB investigation [1] and the local U.S. Attorney, who would handle the grand jury investigation, advocating the position of the United States and the IRS. See 28 U.S.C. § 519. The Court concludes that Document 1 is entirely covered by the attorney-client privilege.

## THE ATTORNEY'S WORK PRODUCT PRIVILEGE

■ In *N.L.R.B. v. Sears, Roebuck & Co.,* *supra,* 421 U.S. at 154, 95 S.Ct. at 1518, the Supreme Court held:

It is equally clear that Congress had the attorney's work-product privilege specifically in mind when it adopted Exemption 5 ... The Senate Report states that Exemption 5 "would include the working papers of the agency attorney and documents which would come within the attorney-client privilege if applied to private parties," S.Rep. No. 813, p. 2; and the case law clearly makes the attorney's work-product rule of *Hickman v. Taylor,* 329 U.S. 495 [67 S.Ct. 385, 91 L.Ed. 451] (1947), applicable to Government attorneys in litigation. [Citations omitted in part]; *United States v. Anderson* [supra] [additional citations omitted]. Whatever the outer boundaries of the attorney's work-product rule are, the rule clearly applies to memoranda prepared by an attorney in contemplation of litigation which set forth the attorney's theory of the case and his litigation strategy. [Citations omitted]; *Hickman v. Taylor, supra,* at 510–511 [67 S.Ct. at 393–394].

*Hickman,* on its facts, extended this privilege only to material prepared by an attorney for impending litigation, but, applying the basic rationale, the Courts have extended it to materials not prepared for litigation. *Natta v. Hogan, supra,* at 693. The Court finds that Documents 1, 4, and 5 were prepared by agency attorneys in contemplation of grand jury proceedings. As grand jury proceedings are a form of litigation, the Court concludes that said documents are nondiscoverable and therefore covered by Exemption 5 as attorney work product.

Although the memorandum attached to Document 2 is also clearly covered by the attorney work-product rule, for the same reasons as applicable to Documents 1, 4, and 5, the Plaintiffs contend that, as Document 2 itself was not prepared by an attorney, it is not covered. However, as Document 2 restates the attorney's questions and answers them, the Court concludes that it is covered as attorney work product.

1. The persons receiving copies were, according to the note on the letter, the Assistant Regional Commissioner for Intelligence of the Southwest Region, the Chief of Intelligence in Oklahoma City, the Director of Intelligence in Washington, D.C., the Director of the Criminal Tax Division, and the Regional Counsel in Dallas.

The Plaintiffs also contend that the documents prepared by attorneys are final opinions or dispositions, which Federal agencies are required to make available for public inspection and copying, under the FOIA, 5 U.S.C. § 552(a)(2)(A). This contention is without merit. Legal memoranda explaining a decision not to pursue litigation may be such a "final opinion", *N.L.R.B. v. Sears, Roebuck & Co., supra,* 421 U.S. at 155–159, 95 S.Ct. at 1518–1520, but memoranda explaining a decision to pursue litigation is not such a final opinion, *N.L.R.B. v. Sears, Roebuck & Co.,* 421 U.S. at 159–160, 95 S.Ct. at 1520–1521. The "final opinion" rule is designed to prevent the creation of secret agency law. The Court concludes that this rule is simply not applicable here.

Finally, the Plaintiffs contend that the descriptions contained in the Purkiss affidavit of the disputed documents is not sufficient to permit the Plaintiffs to challenge the claimed exemptions. As the Court previously ordered the documents to be produced to the Court for an *in camera* inspection, the Court has examined all five documents carefully and compared them with the descriptions in the affidavit. The Court concludes that the descriptions are sufficient to permit the Plaintiffs to launch their challenges.

Having concluded that four of the documents are covered by the attorney work-product privilege, the Court notes that the Plaintiffs have made no serious effort to come within the exception to the rule that an attorney's work product is privileged from discovery. A party seeking discovery of the work product of an attorney may nevertheless obtain such discovery where he shows that it contains evidence essential to his presenting his case in litigation adverse to the party resisting discovery. This exception may apply where such evidence is not otherwise available and the party seeking discovery shows that he has not failed to make reasonable efforts to obtain the same information without discovery. *Natta v. Hogan, supra,* at 693. The Plaintiffs herein attempt to show that the information sought in this FOIA suit is relevant to a possible suit by the Plaintiffs against IRS officials. Even if the documents disputed here were discoverable in such a case, the Plaintiffs have not sued on those grounds in this case. Hence, as this is an FOIA case only, the Plaintiffs stand only in the shoes of any member of the public seeking public information, not in the shoes of a plaintiff in a different type of case.

## THE DELIBERATIVE PROCESS PRIVILEGE

This privilege, which is also known as the governmental privilege or the executive privilege, is claimed by the Defendants to apply to Documents 2–5. While the attorney-client privilege permits nondisclosure of an attorney's opinion or advice in order to protect the secrecy of the underlying communications from the client:[2]

> ... [T]he deliberative process privilege directly protects advice and opinions and does not permit the nondisclosure of underlying facts unless they would indirectly reveal the advice, opinions, and evaluations circulated within the agency as part of its decision-making process."[3]

The purpose of this privilege is to protect the deliberative process of making government policy from the inhibiting effect of public disclosure. Pure, raw factual material is not protected by this privilege, but, where such factual material is selected or interpreted or otherwise so closely intertwined with opinion that it cannot reasonably be segregated from it, it will be covered by the privilege. Of course, once a decision is made and deliberation ceases, documents explaining the decision are not cover-

---

2. The attorney-client privilege does not protect the secrecy of the underlying *facts,* as suggested by the Court of Appeals for the District of Columbia Circuit in *Mead Data Central, Inc. v. U.S. Dept. of Air Force, supra,* at 254, n. 28. Rather, it protects the client's *communications,* which might disclose the client's opinions, admissions, and other matters relevant to developing a theory of the case.

3. *Id.*

ed by the privilege and may be required to be disclosed under 5 U.S.C. § 552(a)(2)(A), (B) or (C). *Mead Data Central, Inc. v. U.S. Dept. of Air Force, supra,* at 256–263. Hence, a document covered by this privilege must (1) be predecisional material, (2) be part of the deliberative process leading toward the formation of government policy and (3) consist of opinions or recommendations rather than segregable facts. To the extent that a document contains segregable factual material, it is not covered by the deliberative process privilege.

■ The Plaintiffs herein contend that all of the disputed documents are post-decisional. However, each of the documents disputed herein involve the pursuit, rather than the termination, of an investigation. As long as an investigation moves toward adjudication, no opinion relating only to such investigation is a publishable statement of policy, 5 U.S.C. § 552(a)(2)(B), or a publishable "final opinion ... made in the adjudication of cases," 5 U.S.C. § 522(a)(2)(A). Hence, the Court concludes that Documents 2–5 are predecisional.[4]

Although all of the documents for which this privilege is claimed contain some factual information, the Court concludes that all such factual material is inextricably intertwined with recommendations and nonfinal opinions. In this connection, the Court has examined the 11-page attachment to Document 3 especially closely. The Purkiss affidavit, paragraph 6, very briefly describes the bulk of this attachment, the 11-page memorandum from the special agents to the District Director, as follows:

> It first discusses the background of the LSB investigation, and then details and analyzes the transactions that indicate potential violations of the Internal Revenue Code by LSB.

Having viewed the documents *in camera,* the Court finds that this description is sufficient to allow the Plaintiffs to challenge the withholding of the document. This bare description could be expanded, as the attachment to Document 3 contains a description of the LSB investigation and related litigation before Judge Thompson of this Court, the progress and status of the investigation, the persons and transactions being investigated in great detail, the theories under which the special agents believed the transactions constituted possible violations of law, and, finally, the recommendation that a grand jury investigation be requested and suggestions as to the manner and method in which it might be conducted. Although the attachment to Document 3 consists primarily of factual material, this material is in no way "purely factual" or "raw data." Further description of the document would necessarily reveal nonfinal opinions and recommendations of agency personnel.

Finally, the Court agrees with the Defendants that the parenthetical paragraph on page 10 of the attachment to Document 3 contains "return information" which the Defendants are prohibited from disclosing, under 26 U.S.C. § 6103. Although the Plaintiffs assert that certain persons have given their consent to disclosure of this material, their consent is irrelevant, as they are not the taxpayers whose returns are involved.

Therefore, the Court concludes that the Defendants' motion for summary judgment should be sustained, and the Plaintiffs' motion for summary judgment should be denied.

---

4. Although the Defendants do not claim the deliberative process privilege for Document 1, no reason appears for this omission, as the relevant decision is a decision to terminate the criminal case, a decision which may not be made by the Regional Counsel and may not be made until a judgment of conviction or acquittal is rendered. See *Renegotiation Bd. v. Grumman Aircraft Engineering Corp.,* 421 U.S. 168, at 185–190, 95 S.Ct. 1491, at 1500–1503, 44 L.Ed.2d 57 (1975).