**BUTLER v. DENTON et al.**

Civil Action No. 1123.

District Court, E. D. Oklahoma.

Oct. 2, 1944.

W. N. Dannenburg and G. C. Spillers, both of Tulsa, Okl., for plaintiff.

Forrester Brewster, of Muskogee, Okl., for defendants.

Francis Stewart, Asst. U. S. Atty., of Muskogee, Okl., for intervener, the United States.

RICE, District Judge.

The funds involved in this litigation are a portion of the estate left by Adam Scott, a full-blood Creek Indian. They are now and have at all times been in the custody and under the supervision and control of the Secretary of the Interior. They were derived as profits from oil and gas produced from the allotted lands of the said Adam Scott, who died intestate on September 6, 1925. After the death of Adam Scott his father and mother, George and Mannie Scott, both full-blood Creek Indians, began proceedings in the County Court of McIntosh County, Oklahoma, for the determination of the heirs of said deceased, alleging that they were his sole and only heirs. Notice was served upon Jennie Kelly (plaintiff herein), and she filed pleadings in the heirship proceedings asserting that she was a child of Adam Scott, born out of wedlock, but that the said Adam Scott, by instruments in writing, had recognized her as his child in the manner prescribed by 84 O.S.A. § 215. The County

Court of McIntosh County, Oklahoma, determined that Jennie Kelly, now Jennie Kelly Butler, was the child of Adam Scott, and that she had been recognized by him in the manner provided by law, and that she was the sole and only heir of Adam Scott. George and Mannie Scott appealed to the District Court of McIntosh County, Oklahoma, and the District Court decided that George and Mannie Scott were the sole and only heirs of Adam Scott, deceased. An appeal was taken to the Supreme Court of the State of Oklahoma, and the district court was reversed and a new trial ordered. See Kelly v. Scott, 125 Okl. 208, 257 P. 303.

After the decision of the Supreme Court, the interested parties entered into negotiations for the settlement of the controversy between them. An agreement for the settlement was reached and reduced to writing, the settlement being contingent upon the approval of the Secretary of the Interior. Certain requirements were exacted by the Secretary of the Interior which resulted in a modification of the original agreement. This modification was reduced to writing and submitted to the Secretary of the Interior, and thereupon the agreement was approved by the Secretary of the Interior.

Paragraph One of the original agreement is as follows:

"That there shall be paid by the Secretary of the Interior, to the credit of George Scott and Mannie Scott, or to their legal guardian, for their use and benefits, as may be determined by the Department of the Interior, out of the funds in his hands belonging to the estate of Adam Scott, deceased, the sum of Sixty-Five Thousand, Three Hundred Forty-Six and no/100 ($65,346.00) Dollars."

The second paragraph is as follows:

"That George Scott and Mannie Scott, during their natural lives, and the life of each of them, shall have the right to the use and occupancy of the homestead lands, described as follows, to-wit: (description omitted), and Jennie Kelly shall pay the taxes thereon."

The Supplemental Agreement provided that:

"the original stipulation be amended so as to increase the amount of the award to be placed to the credit of said George Scott and Mannie Scott to $115,000.00 * * *."

The approval of the Secretary of the Interior was evidenced by a letter directed to the Superintendent of the Five Civilized

-Tribes, dated December 19, 1927, said letter being written by Charles H. Burke, Commissioner of Indian Affairs, and bearing the approval of the Assistant Secretary of the Interior. Said letter contains the following paragraph:

"It will be seen that it is proposed to award to George Scott and Mannie Scott, restricted full-blood incompetent Creek allottees, the father and mother of said Adam Scott, deceased, $115,000.00 of the funds belonging to the estate, and that said George Scott and Mannie Scott shall have during their natural lives the right to the use and occupancy of certain real property described in the stipulations."

· Said letter instructed the Superintendent of the Five Civilized Tribes to "credit to the account of George Scott and Mannie Scott, from the funds of the estate of Adam Scott, deceased, the sum of $115,000.00 as restricted money, and the remainder of the estate, consisting of bonds and money, to be turned over to the guardian of Jennie Kelly, so that the stipulations as set out may be carried into effect."

The guardians for the respective wards petitioned the County Court of McIntosh County, Oklahoma, for authority to enter into this settlement. The County Court approved and authorized the guardians to make the settlement. Thereupon, the parties appeared in the proceedings in the District Court of McIntosh County, Oklahoma, being cause No. 4896 in said court, and petitioned that court for a decree approving the settlement, and on January 23, 1928, the District Court of McIntosh County, Oklahoma, entered its judgment approving the settlement. The journal entry of said judgment was endorsed and approved by all the attorneys for the respective parties. The minutes of the court reflect that the court rendered a decree "approving and ratifying the compromise and settlement agreed on by the parties hereto and approved by the Department of the Interior of the United States * * *, all as per Journal Entry signed and filed."

Mannie Scott survived George Scott, and on October 24, 1941, Mannie Scott died testate while a resident of Muskogee County, Oklahoma, and her will was admitted to probate by the County Court in said county on February 19, 1942. By the terms of the will Mose Mulley and Billy Washington, both full-blood unenrolled Creek Indians, are the only legatees and devisees under the will. At the time of the death of Mannie Scott there remained in the hands of the Secretary of the Interior the approximate sum of $97,800.50, the subject matter of this litigation.

In March, 1943, the plaintiff filed suit in the District Court of Muskogee County, Oklahoma, against Gordon Denton, the executor of the estate of Mannie Scott. In this original suit plaintiff made no mention of the proceedings narrated above. In the original petition the plaintiff alleged that the funds were then in the office of the Superintendent of the Five Civilized Tribes; that the funds amounted to $97,800.50, and represented the remainder of the $115,000 which she stated she had agreed should be placed to the credit of George Scott and Mannie Scott, for their use and benefit and for the use and benefit of the survivor during the lives of the said George Scott and Mannie Scott; that they had only a life estate in said sum of money; and that at the death of the survivor the balance on hand should be the property of the plaintiff.

The executor filed a motion in the state court to require the plaintiff to make additional parties, to-wit, Mose Mulley and Billy Washington, and to require the plaintiff to state if the agreement mentioned in the original petition were in writing, and if so, that said agreement and all accompanying documents be attached to and made a part of plaintiff's petition.

The court sustained this motion, and as a result the plaintiff filed an amended petition, attaching thereto a copy of the judgment of the District Court of McIntosh County, Oklahoma, in cause No. 4896. In this amended petition she alleged that the judgment, a copy of which was attached, was not the judgment actually entered by the District Court of McIntosh County, Oklahoma; that the judgment "actually entered contained a provision to the effect that the said sum of $115,000.00, or so much thereof as the said George Scott and Mannie Scott might use during their lifetime and for the life of the survivor, was for the use of the said George Scott and Mannie Scott during their lives and during the life of the survivor, but that the title to the said money belonged to the plaintiff herein and at all times resided in her, and that the remainder, if any, at the death of the survivor, George Scott or Mannie Scott, should be and remain the separate and individual property of the plaintiff herein * * *."

Plaintiff further stated in her amended petition that she intended to file an "application for a nunc pro tunc entry, setting out the correct form of judgment actually entered by the trial court in said cause No. 4896." In her amended petition the plaintiff asked a judgment determining that the defendants had no interest in the funds then in the possession of the Superintendent of the Five Civilized Tribes, and in addition sought a judgment against the executor for the amount of money alleged to be in the possession of the Superintendent of the Five Civilized Tribes.

After the filing of the amended petition by the plaintiff, the cause was removed to this court by the United States of America, after notice of the pendency of said action was served upon the Superintendent of the Five Civilized Tribes pursuant to Section 3 of the Act of Congress approved April 12, 1926, 44 Stat. 239, 240, and the cause was filed in this court on November 1, 1943.

■■■ The right of the Government to remove the suit and the jurisdiction of this court after removal cannot be seriously questioned. The United States of America, after causing the said suit to be removed, filed its Petition in Intervention herein and asked that this court determine the owners of the fund and decree that the fund is restricted and should remain on deposit with the Secretary of the Interior in the office of the Superintendent of the Five Civilized Tribes.

After said cause was removed to this court the plaintiff filed in the District Court of McIntosh County, Oklahoma, in cause No. 4896, a motion for an order nunc pro tunc correcting the judgment entered therein in January, 1928, and has at all times seriously contested the right of this court and the jurisdiction of this court to proceed, the contention of the plaintiff being that this court cannot by order nunc pro tunc correct the judgment entered by the District Court of McIntosh County, Oklahoma, and that until the District Court of McIntosh County, Oklahoma, passes upon said motion this court may not hear and determine the matter now before it.

The first motion called to the attention of this court was defendant's motion for a summary judgment, presented on January 10, 1944, at which time the court delayed action on the motion to allow the parties time to proceed to a hearing in the state court upon the plaintiff's application for an order nunc pro tunc. On March 17, 1944, the motion for summary judgment was set for argument. At that time it developed that the state court had not acted. The motion for summary judgment was taken under advisement. Thereby ensued another delay and another opportunity for the parties to secure the action of the state court. While the matter was under advisement the plaintiff filed a motion to remand, and subsequently filed a motion to dismiss without prejudice, the principal contention at all times being that this court had no jurisdiction to proceed.

On June 5, 1944, the motion to remand and the motion to dismiss without prejudice, and also the motion for summary judgment were overruled and the defendants were directed to file answers. The matter was set for trial, and again the plaintiff by motions filed raised the question that this court could not proceed by reason that a motion was pending in the District Court of McIntosh County, Oklahoma, for an order nunc pro tunc correcting the judgment entered therein in 1928.

Plaintiff's suit presents two questions, as stated by her attorney:

"First, the plaintiff contends that under the decree as entered the $115,000.00 set aside for the use of George Scott and Mannie Scott was for life of those people only, with the residue to the plaintiff in this case.

"Second, that the judgment of the District Court or the journal entry entered in case No. 4896 in the District Court of McIntosh County, Oklahoma, entitled: In the Matter of the Determination of Heirship of Adam Scott, deceased, George Scott and Mannie Scott, Petitioners, vs. Jennie Kelly, a minor, by her guardian, Sam Kelly, and W. N. Dannenburg, her guardian ad litem, does not reflect the judgment of the court in that case and that the judgment specifically and unequivocally limited the $115,-000.00 referred to as having been set aside to Mannie Scott and George Scott for life, with remainder to the plaintiff in this case, Jennie Kelly Butler."

The attorney for plaintiff admitted that this court had jurisdiction to determine the first contention. The second contention involved a collateral attack on a judgment which, from the pleadings, is shown to be one approving a written compromise and settlement agreement.

■■■ The evidence heard upon trial conclusively established that the decree, a copy

of which was attached to plaintiff's pleadings, correctly reflected the judgment of the District Court of McIntosh County, Oklahoma. The evidence conclusively shows it was an agreed judgment—one that all the parties requested the court to enter. That the parties presented to the court written evidence of their compromise and settlement agreement and the written approval by the Secretary of the Interior and asked the court to enter a decree approving same. The judgment is a consent decree. The District Court of McIntosh County could not have entered any decree other than one approving or disapproving the compromise and settlement agreement.

The operation and effect of such a judgment is to be gathered from the terms of the agreement of the parties and it cannot be extended beyond the clear import of such terms, and had the judgment not conformed to the agreement of the parties no formal order correcting it would have been essential to the granting of relief consistent with the parties' agreement. Midwest Refining Co. v. George, 44 Wyo. 25, 7 P.2d 213.

A judgment by consent is regarded as in the nature of a contract and a binding obligation between the parties thereto, which neither, in the absence of fraud or mistake, has the right to set aside. Cobb v. Killingsworth, 77 Okl. 186, 187 P. 477; United States Construction Co. v. Armour Packing Co., 35 Okl. 177, 128 P. 731; Starr v. Tennant, 35 Okl. 125, 128 P. 733.

There is no contention of fraud in this case. There is no mistake. There is only a difference of opinion as to the meaning of the judgment, or stated another way, the meaning of the compromise and settlement agreement as approved by the Secretary of the Interior.

Does the filing by the plaintiff of a motion for an order nunc pro tunc to correct the consent decree of the District Court of McIntosh County, Oklahoma, operate to oust this court of jurisdiction, or to longer stay its action? I think not. Plaintiff does not attack the agreement which is the basis of the judgment. Under some circumstances a motion filed in another case in another court might challenge the propriety of this court proceeding in a case previously filed herein, but it would not oust this court of jurisdiction. After waiting approximately eight months, it was concluded after hearing the evidence that further delay is not required.

Looking now to the written instruments of compromise and settlement, the approval of the Secretary of the Interior, and the decree of the District Court of McIntosh County, Oklahoma, can it be said that the $115,000 was set aside for the use of George Scott and Mannie Scott for life only, with the residue to the plaintiff? Originally, at common law, such an estate in money was not recognized, but it seems now to be well settled that such an estate in money may be created. 33 Am.Jurisprudence, 465; Warfield v. Bixby et al., 8 Cir., 51 F.2d 210. The creation of a life estate in money with remainder over should be done by appropriate language clearly evidencing such an intent and clearly limiting the interest of one receiving the fund, with a provision that the remainder should revert to a person certain. The language of the agreement under consideration falls far short of meeting the requirements for creation of a limited estate. We think the language of the agreements evidences that in consideration of the settlement of the legal controversy then existing the estate of Adam Scott was divided between the plaintiff and George and Mannie Scott in the proportions designated, and that the approval of the Secretary of the Interior, necessary for its consummation, was given upon that understanding. His letter of approval is not subject to any other reasonable interpretation.

Under the foregoing conclusion the plaintiff has no interest in the funds remaining with the Superintendent of the Five Civilized Tribes. The court concludes that the funds remaining at the death of Mannie Scott passed under the terms of her will to Mose Mulley and Billy Washington, both full-blood Indians; that they are restricted funds and should remain in the custody of the Superintendent of the Five Civilized Tribes.

Judgment accordingly is this day entered.