**UNITED STATES of America,**
**Plaintiff,**

v.

**BEATRICE FOODS COMPANY,**
**Defendant.**

**No. 4–70 Civ. 459.**

United States District Court,
D. Minnesota,
Fourth Division.

March 12, 1971.

Robert G. Renner, U. S. Atty., by Neal J. Shapiro, Asst. U. S. Atty., H. Robert Field and James E. Corky, Federal Trade Commission, Washington, D. C., for plaintiff.

Cant, Haverstock, Gray, Plant & Mooty, by Robert E. Bowen, Minneapolis, Minn., and Winston, Strawn, Smith & Patterson, by Ronald Butler, Chicago, Ill., for defendant.

## ORDER ON OBJECTIONS TO INTERROGATORIES

NEVILLE, District Judge.

The plaintiff, United States of America has objected to certain interrogatories directed to it by defendant Beatrice Foods Company (Beatrice) and moves for protective orders in connection therewith. The motions were argued before the court on January 14, 1971 in Minneapolis, Minnesota and extensive and exhaustive briefs have been submitted on the issues raised.

A brief summary of the case is necessary to an understanding of the government's objections. Pursuant to a com-plaint filed by the Federal Trade Commission (FTC) attorneys in 1956, an F. T.C. Trial Examiner after voluminous hearings entered a decision in 1964 finding Beatrice in violation of 15 U.S.C. § 45 and requiring divestiture of certain interests or holdings and prohibiting acquisition of similar interests without FTC approval. This decision was sustained by a final order of the Commission on December 10, 1965, and Beatrice filed a petition for review with the Court of Appeals for the Ninth Circuit. During the pendency of that appeal, the parties arrived at a negotiated agreement modifying the original order to some extent, and by joint motion sought its adoption by formal decree of the Ninth Circuit. On May 23, 1967, the court entered a final order affirming this negotiated agreement as filed by the parties.[1] The FTC's subsequent modified Order, issued June 7, 1967, in accordance with the Ninth Circuit's decree, is the binding Order upon which this enforcement action is brought.

Shortly before the negotiation of the Beatrice agreement, the FTC apparently reached similar agreements with at least three other major dairy companies, which agreements forbade the acquisition of "the whole or any part of the stock, share capital, or assets" of any milk or milk products firm. The FTC's original order in the Beatrice proceedings and the settlement decree ultimately negotiated and approved by the Ninth Circuit, however, prohibited (at Paragraph III therein) the acquisition of "any interest" in such firms.

This Section 45(*l*) enforcement action alleges, *inter alia*, at Paragraph 7 of the complaint, that defendant Beatrice "acquired an interest" in Maple Island

---

1. The negotiated settlement without any court order would have enjoyed the full force and effect of law, and would thus be a basis for subsequent enforcement actions under 15 U.S.C. § 45(*l*), without the approval or acquiescence of the Court of Appeals' for the Ninth Circuit. The parties apparently sought the imprimatur of the court perhaps to permit recourse to contempt proceedings if for no other reason as an alternative enforcement mechanism in the event of an alleged violation.

Dairies, Inc., a corporation operating in Minnesota on or about September 1, 1968, in violation of the Order. Such allegation obviously draws into question the scope and effect of the Order's prohibition of acquiring an "interest" in such firms.

Beatrice apparently takes the position that the word "interest" in the 1967 Order must be construed as substantively equivalent to the language "stock, share capital, or assets" which appears in the consent decrees entered between the FTC and the other dairy products companies prior to the negotiation of the final Beatrice Order, and that the meaning of "interest" is thus governed by the subsequent judicial and administrative decisions, if any, and the "practical construction" given the language used in those other decrees. It seeks to establish the equivalence of these terms by reconstructing the negotiations between Beatrice and the FTC to demonstrate the intentions behind the modification of the original Order. Evidence of such negotiations, it contends, will be relevant under the exception to the parol evidence rule to establish the intentions of the contracting parties as to ambiguous contractual language.

It is against this background that the following motions must be considered:

I. The Government has moved for a protective order which would entitle it to ignore Interrogatory #1, which reads:

> "State the name and address of each person who negotiated the terms of the contract which constitutes the settlement decree referred to in the complaint."

The Government objects to this Interrogatory on the ground that its answer would not conceivably lead to the discovery of facts relevant to the issues in the case. It contends that the order by definition expresses the intention of the approving court, and that evidence of the intentions of the parties is irrelevant to the issue of the meaning of the word "interest". The parties have briefed the court *in extensio* on the question whether evidence as to the negotiations which underlie the 1967 final order is admissible in the trial of the case.[2] The court

---

2. The parties seem to agree that the character of the order will determine the admissibility of evidence surrounding its negotiation and tending to explain the intended meaning of any ambiguous terms. The only decision precisely in point is Leonia Amusement Corp. v. Loew's Inc., 13 F.R.D. 438 (S.D.N.Y.1952), which permitted discovery of information about such negotiations without ruling on the eventual evidentiary question. If the order in this case can be characterized as a *contractual* undertaking, the parol evidence rule and its exceptions would presumably apply.

30A C.J.S. Equity, § 681 ("Consent Decree"), p. 858 states: "being in the nature of a contract * * * a consent decree should be construed as a contract is construed." See Hart Schaffner & Marx v. Alexander's Dept. Stores, Inc., 341 F.2d 101 (2d Cir. 1965); Artvale. Inc. v. Rugby Fabrics Corp., 303 F.2d 283 (2d Cir. 1962); United Steelworkers of America v. Copperweld Steel Co., 230 F.Supp. 383 (W.D.Pa.1964); Butler v. Denton, 57 F.Supp. 656 (E.D.Okl.

1944), aff'd 150 F.2d 687 (10th Cir. 1945); United States v. Hartford-Empire Co., 1 F.R.D. 424 (N.D.Ohio 1940).

On the other hand, there is authority for the proposition that the Order is a *Judicial* act expressive of the court's intent, so that evidence as to the intentions of the parties is irrelevant in the construction. Gila Valley Irrigation District v. United States, 118 F.2d 507, 510 (9th Cir. 1941). *Cf.*, United States v. Swift & Co., 286 U.S. 106, 115, 52 S.Ct. 460, 76 L.Ed. 999 (1932); Siebring v. Hanson, 346 F.2d 474, 477 (8th Cir. 1965), cert. denied 382 U.S. 943, 86 S.Ct. 400, 15 L.Ed.2d 352 (1965). The government is particularly insistent upon the application of that rule in this case, where the Ninth Circuit acted on a fully developed administrative record. Its act of approving the negotiated order, it is argued, can be readily distinguished from the usual approved "consent decree" entered before the dispute reaches the hearing stage for adjudication at the administrative level.

deems it unnecessary and inappropriate to resolve that issue at this stage of the litigation.

▆▆ The statute under which this action is brought, 15 U.S.C. § 45(*l*), provides for a penalty "of not more than $5,000 for each violation" of the FTC's order, and "each day of continuance of such failure or neglect shall be deemed a separate offense." While good faith is not a defense to such an action, it is clearly relevant to the court's discretionary determination of the extent of civil penalties to be assessed under that provision. United States v. H. M. Prince Textiles, Inc., 262 F.Supp. 383, 388–389 (S.D.N.Y.1966); United States v. Vitasafe Corp., 212 F.Supp. 397 (S.D.N.Y. 1962), aff'd 352 F.2d 62 (2d Cir. 1965). Thus, evidence tending to establish that the defendant's allegedly violative conduct was consistent with its reasonable understanding of the scope of the governing order may well be relevant on the issue of damages. The court thus overrules the government's objection to Interrogatory No. 1 and hereby orders it to answer the same.

The court recognizes that its inquiry on this motion is not as to the ultimate admissibility of any evidence garnered as a result of the government's answer to Interrogatory No. 1. As indicated above, the court does not now decide whether the language of the order is ambiguous or whether the exception to the parol evidence rule applies to the construction of such order. This ruling should govern objections on the same theory which might be lodged by the government if and when counsel for Beatrice attempt to depose under the discovery rules those individuals whose identities are disclosed pursuant to Interrogatory No. 1.

II. The government also requests protective orders with respect to defendant's Interrogatories No. 2 and No. 3, which read:

No. 2. "Referring to Paragraph 7 of Count I of the complaint, state with particularity any 'interest' in Maple Island Dairies, Inc. owned by the defendant."

No. 3. "Referring to Paragraph 7 of Count I of the complaint, state with particularity any 'interest' in Maple Island Dairies, Inc. in which the defendant has any 'direct or indirect' ownership."

▆▆ The government objects first to the terminology of the Interrogatories, specifically to the characterization of the action as involving only "ownership" of Maple Island Dairies, Inc. The complaint unequivocally alleges acquisition of an "interest" in Maple Island, which language conforms to the term used in the order as discussed hereinabove. Certainly the government cannot be bound by any gloss applied to the language of its complaint by the defendant, and resolution of the question whether "interest" means something other than "ownership" will not be influenced by the defendant's choice of words in discovery proceedings. Therefore, such is not a valid ground for issuance of a protective order or sustaining an objection to Interrogatories No. 2 and No. 3. The government in its answers to interrogatories No. 2 and No. 3 regarding "ownership" should deal with *all* alleged acquisitions of "interests" in Maple Island Dairies and not omit certain transactions which it intends to demonstrate constitute acquisitions of "interests," within the prohibition of the order, which somehow fall short of "ownership" as that term is understood in the context of this case. To fail to do so just invites further interrogatories and creates delay. The government also objects to Interrogatories No. 2 and No. 3 as calling for a full exposure of "each segment of its legal theory as involving transactions which were engineered, refined and consummated by the defend-

ant itself."[3] It contends that the information sought by such Interrogatories is within Beatrice's present possession inasmuch as the complaint charges violations of the order by virtue of the Beatrice relationship with Maple Island. As such, it is argued, requiring response would place a heavy burden on the government with no countervailing benefit to Beatrice.

Beatrice, on the other hand, argues that its purpose is "to find out what the government's contentions are when it charges a violation of the agreed order so it can prepare a defense to them."[4] A further purpose, not argued by Beatrice, would be to discover information relevant to the claimed acquisitions which might be beyond the information available to Beatrice. If such information exists, it ought to be made available to Beatrice.

■ The scope of inquiry by Interrogatories under Fed.R.Civ.P. Rule 33 is governed in part by Rule 26 as most recently amended, which reads at 26(b) (1) in pertinent part:

"Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action."

As the Supreme Court noted in Hickman v. Taylor, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1946), one of the purposes of discovery under the Federal Rules is to narrow the issues for trial. Thus, courts have consistently held that a party may propound interrogatories calling for the disclosure of the opposing party's specific position as to the facts underlying his claim, notwithstanding that such facts, divorced from their application to the legal principles governing the case, may already be known or accessible to the propounding party. United States v. Article of Drug, 43 F.R.D. 181 (D.Del.1967); Baim & Blank, Inc. v. Philco Distributors, Inc., 25 F.R.D. 86

(E.D.N.Y.1957); Wright, Federal Courts (2nd Ed., 1970), § 81, p. 356. Cf. Leumi Financial Corp. v. Accident & Indemnity Co., 295 F.Supp. 539 (S.D.N. Y.1969); Diversified Products Corp. v. Sports Center Co., 42 F.R.D. 3 (D.Md. 1967). The court in *Baim & Blank, supra*, accordingly reasoned:

"The purpose of the deposition-discovery procedure is not only for the ascertainment of facts, but also to determine what the adverse party contends they are, and what purpose they will serve, so that the issues may be narrowed, the trial simplified, and time and expense conserved. It has also been held that inquiry, either by deposition or interrogatory, into facts within the discoverer's own knowledge, and of which he already has information, are proper. Benevento v. A. & P. Food Stores, Inc., D.C.E.D.N.Y., 26 F.Supp. 424; Nakken Patents Corp. v. Rabinowitz, D.C.E.D.N.Y., 1 F.R.D. 90; Moore's Federal Practice, 2nd Ed., Secs. 26.21, 33.13."

25 F.R.D. at 87.

Against the foregoing body of case law, the court must consider the following 1970 amendment to Rule 33:

"An interrogatory otherwise proper is not necessarily objectionable merely because an answer to the interrogatory involves an opinion or contention that relates to fact or the application of law to fact, but the court may order that such an interrogatory need not be answered until after designated discovery has been completed or until a pre-trial conference or other later time."

The Notes of the Advisory Committee responsible for that amendment indicate that it was not intended to constrict the scope of discovery of specific facts and contentions of the parties:

"Rule 33 is amended to provide that an interrogatory is not objectionable

---

3. Government's Brief of December 8, 1970, at page 6.

4. Beatrice's Brief of January 11, 1971, at page 21.

merely because it calls for an opinion or contention that relates to fact or the application of law to fact. Efforts to draw sharp lines between facts and opinions have invariably been unsuccessful, and the clear trend of the cases is to permit 'factual' opinions. As to requests for opinions or contentions that call for the application of law to fact, they can be most useful in narrowing and sharpening the issues, which is a major purpose of discovery."

Under the circumstances, the court concludes that responses to Interrogatories No. 2 and No. 3 may substantially aid in narrowing the issues for trial, and that the government has not demonstrated adequate basis upon which to issue the requested protective order or to sustaining objections to such interrogatories. Therefore, the government's motion with respect to Interrogatories No. 2 and No. 3 is denied.

III. Finally, the government requests a protective order as to certain categories of documents, the existence of which was disclosed pursuant to defendant's Interrogatory No. 4(e). That Interrogatory reads:

> "Identify each and every document or memorandum in your possession referring to the matters alleged in the complaint."

The government's brief listed, *inter alia,* the following categories of such documents, as to all of which it claims protection under the doctrines of Work Product and Attorney-Client privilege:

> "1. Category A—Legal Memoranda from Joseph J. Gercke, Chief, Compliance Division, to the Commission concerning Compliance Reports of Defendant, the issuance of compulsory process under Section 6(b) of the Federal Trade Commission Act (15 U.S.C. § 46(b)) and recommendations as to the bringing of the present suit.
>
> 2. Category E—Legal Memoranda and attached exhibits submitted to the

Department of Justice outlining the theory of the case and setting forth the facts, evidence and anticipated defenses.

> 3. Category J—Legal Memoranda from Joseph J. Gercke to the Commission concerning the eventual divestiture of the assets which are the subject matter of Count II."

At the hearing copies of those documents were submitted to the court for its *in camera* inspection. On the basis of the court's perusal of the documents, it concludes that disclosure may be protected under the doctrine of "executive privilege." See Judge Robinson's lengthy discussion in Carl Zeiss Stiftung v. V. E. B. Carl Zeiss, Jena, 40 F.R.D. 318 (D.D.C.1966), aff'd per curiam without opinion, 128 U.S.App.D.C. 10, 384 F.2d 979 (1967), cert. denied, 389 U.S. 952, 88 S.Ct. 334, 19 L.Ed.2d 361 (1967). See also Detroit Screwmatic Co. v. United States, 49 F.R.D. 77 (S.D.N.Y.1970); Freeman v. Seligson, 132 U.S.App.D.C. 56, 405 F.2d 1326 (1968); Kaiser Aluminum & Chemical Corp. v. United States, 157 F.Supp. 939, 141 Ct.Cl. 38 (1958). Cf. Timken Roller Bearing Co. v. United States, 38 F.R.D. 57 (N.D. Ohio 1964).

As the decisions indicate, the existence of the privilege is determined by a balancing of the necessity for invocation of the privilege, on the one hand, against the potential value to the private litigant of the requested production on the other. The balance weighs heavily against Beatrice. It has argued that access to such documents is essential to an understanding of the specific contentions of the government as to particular incidents, transactions or conditions alleged to violate the order, because the government has heretofore refused to disclose such facts and contentions with particularity. That arguable justification for production of these documents no longer obtains in light of the court's ruling that the government must re-

spond to Interrogatories No. 2 and No. 3. And even accepting, arguendo, Beatrice's theory that evidence outside the order itself may be admissible as tending to clarify the intended meaning of its allegedly ambiguous terminology, government memoranda speculating after the fact as to the scope of the order if such they do would be irrelevant. As to the FTC's interest in protecting this kind of document from disclosure, its counsel stated its position at the hearing as follows:

"The necessity of the agencies involved for frank and open advice and ready access to the staff is of overriding public importance. If these memoranda had to be written with one eye toward their eventual use in court, I think the possibilities of frankness and openness and full discussion of the merits and demerits of the case involved would be very limited."

The court subscribes to this position.

Since the court finds that the documents in Categories A, E, and J are protected from the requested disclosure by the doctrine of executive privilege, it is unnecessary to discuss the applicability of the Work Product rule and the Attorney-Client privilege, though there may well be merit to the contention as to their applicability in this situation.

At the hearing on January 14th (Tr., page 34), the court indicated that it would order and thus it does hereby order that all discovery proceedings by both parties be completed by August 15, 1971. The court hereby sets a date for a pretrial conference for Friday, August 27, 1971 at 9:00 A.M. at Minneapolis to the end that the case may be ready if possible for trial at the September-October term of this court to be held in Minneapolis.

So ordered in accordance with the above memorandum.