**JUPITER PAINTING CONTRACTING CO., INC.**

v.

**UNITED STATES of America.**

**Civ. A. No. 79–1741.**

United States District Court, E. D. Pennsylvania.

June 30, 1980.

---

Steven T. Stern, Braemer & Kennedy, Philadelphia, Pa., for plaintiff.

Will E. McLeod, Dept. of Justice, Washington, D.C., for defendant.

## OPINION

JOSEPH S. LORD, III, Chief Judge.

This motion for discovery against the Government arises in a taxpayer's suit for refund and abatement of federal employment withholding taxes. The taxpayer's claims total $38,341.18. The Government has counterclaimed for $48,478.80, a sum which includes unpaid taxes, penalties and interest. At issue is whether the taxpayer properly reported as travel expenses funds paid to its employees in 1971 and 1972. The Government contends that these payments were in fact compensation and that by reporting them as expenses the taxpayer substantially understated its employment tax liability for those years.

The taxpayer now moves pursuant to Fed.R.Civ.P. 37(a) to compel production of several documents relating to investigations of the corporation and its principals conducted by the Internal Revenue Service. The Government has turned over a great many of the requested documents, but resists production of the remainder on grounds of governmental privilege, attorney-client privilege and irrelevancy.[1] The taxpayer has in turn conceded that two of the requested documents are privileged and has abandoned its request for them.[2] The

---

1. The Government has asserted its claim of governmental privilege with adequate specificity under the standards of *United States v. O'Neill*, 619 F.2d 222 (3d Cir. 1980). Because the privilege is invoked discriminately I have not insisted on the formal requirement of an affidavit of personal inspection by the agency head. *Accord, Frankenhauser v. Rizzo*, 59 F.R.D. 339, 342 n. 6 (E.D.Pa.1973) (Becker, J.).

At oral argument the Government withdrew its claim of attorney's work-product privilege.

2. These are the "defense" and "counterclaim authorization" letters from District Counsel to the Department of Justice.

Government has submitted the eight items still in dispute to the court for *in camera* inspection.

## I. FACTUAL BACKGROUND

Jupiter Painting Contracting Co., Inc. (Jupiter or taxpayer) is an industrial painting firm specializing in bridge painting. The IRS began to investigate Jupiter in March of 1973. The operation, conducted jointly by what were then known as the Intelligence and Audit Divisions, resulted in two investigatory reports: one by Revenue Agent Shaw, the other by Special Agent Hilferty. The Government has turned over all of the Shaw report as well as the attachments to the Hilferty report, including statements of witnesses, but it refuses to disclose the body of the Hilferty report.

Regional Counsel for the IRS recommended that the Department of Justice seek indictments in the case, but the Department declined to prosecute. Most of the documents for which the Government claims privilege concern these actions. They include: a "Summary for Indictment Purposes" prepared by the Office of the Regional Counsel, the memoranda recommending and declining prosecution, and two memoranda circulated between Regional Counsel and the Intelligence Division commenting upon the decision not to prosecute. After criminal proceedings were discontinued IRS pursued a civil investigation of Jupiter which resulted in a third investigatory report prepared by Revenue Agent Cubbin. The Government resists discovery of only part of the Cubbin report and on the sole ground of governmental privilege.

For these documents, other than the Cubbin report, the Government claims both governmental and attorney-client privilege. In addition, the Government resists production of eighteen pages of transmittal documents and 176 pages of various administrative forms on the ground that they fail to satisfy the minimal relevance requirement of Fed.R.Civ.P. 26(b)(1).

## II. FOIA and the CIVIL DISCOVERY RULES

Jupiter and the Government part company at the outset over the relevance of the Freedom of Information Act (FOIA), 5 U.S.C. § 552, to the claims of privilege advanced here. Jupiter treats the case as if it were a FOIA suit, arguing that the scope of FOIA is co-extensive with the extent of discovery allowed against the Government under the federal rules. The Government responds that this is not a FOIA suit and that FOIA precedents are inapposite.

Clearly the taxpayer has the better of the argument. FOIA represents Congress's considered judgment on the optimum balance between secrecy and disclosure in governmental decisionmaking.[3] This sort of policy question is for the legislature, and no less so because Congress chose to adopt the civil discovery standard for FOIA Exemption 5 which embodies the two privileges here in question.[4] *See Mead Data Central, Inc. v. United States Dep't of the Air Force,* 566 F.2d 242, 252 (D.C.Cir.1977); S.Rep. No. 813, 89th Cong., 1st Sess. 2 (1965) *quoted in NLRB v. Sears, Roebuck & Co.,* 421 U.S. 132, 154, 95 S.Ct. 1504, 1518, 44 L.Ed.2d 29 (1975). This substantive congruence standing alone answers the Government's contention that FOIA and civil discovery are "apples and oranges."

**3.** Advisory Committee's Note to Proposed Fed. R.Evid. 509, 56 F.R.D. 183, 253 (1973).

In 1966 the Congress enacted the Freedom of Information Act for the purpose of making information in the files of departments and agencies, subject to certain specified exceptions, available to the mass media and to the public generally. 5 U.S.C. § 552. These enactments are significant expressions of Congressional policy. The exceptions in the Act are not framed in terms of evidentiary privilege, thus recognizing by clear implication that the needs of litigants may stand on somewhat different footing from those of the public generally. Nevertheless, the exceptions are based on values obviously entitled to weighty consideration in formulating rules of evidentiary privilege."

**4.** Exemption 5, 5 U.S.C. § 552(b)(5), exempts from FOIA's mandatory disclosure requirement "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency. . . . ."

Apart from the language of Exemption 5, it should be obvious that matter available under FOIA cannot sensibly be regarded as privileged. It may be, as counsel for the Government argues, that policy considerations supporting FOIA disclosure differ from those applicable to civil discovery. But that difference is beside the point. No matter what the rationale, once public disclosure is mandated under FOIA further attempts at confidentiality are futile.[5]

■ According to Moore, "the exact impact the provisions of [FOIA] have on discovery under the Rules is difficult to state." 4 Moore's Federal Practice ¶ 26.-61[4.–3], at 26–272 (2d ed. 1979). The few courts which have addressed the question generally have recognized a close correlation between the standards. *See Bank of America v. United States*, 78–2, U.S.T.C. ¶ 9493, at 84,546 (N.D.Cal.1978). Several aspects of the relation between FOIA and the discovery rules are significant for present purposes. Even Exemption 5 is not completely co-extensive with the evidentiary privileges. The non-FOIA civil litigant bears the added burden of showing that the information sought is relevant to the subject matter of the case, or "reasonably calculated to lead to the discovery of admissible evidence." Fed.R.Civ.P. 26(b)(1). Assuming relevance, for reasons already discussed FOIA availability should always defeat a claim of privilege under Rule 26(b)(1). In this manner, FOIA sets a floor for civil discovery against the Government. *Moore-McCormack Lines, Inc. v. I.T.O. Corp. of Baltimore*, 508 F.2d 945, 950 (4th Cir. 1974).

■ The more difficult question is whether FOIA exemptions also set a ceiling. Clearly the exemptions do not create any evidentiary privilege of their own force. *Denny v. Carey*, 78 F.R.D. 370, 373 (E.D.Pa.1978). With regard to a qualified privilege, such as governmental privilege,

FOIA exemption cannot even indirectly delimit claims of privilege since it does not take into account the degree of need for the information exhibited by the claimant. *See United States v. Beatrice Foods Co.*, 52 F.R.D. 14, 20 (D.Minn.1971). Only for an absolute privilege, such as attorney-client, where all claimants stand on equal footing, does FOIA consistently track the scope of discovery available against the Government.

### III. GOVERNMENTAL and ATTORNEY–CLIENT PRIVILEGE

The two privileges asserted here by the Government are themselves closely related. *See Mead Data Central, supra.* Each aims, however, at a different target.

■ The governmental privilege, sometimes described as the deliberative process or executive privilege, serves to avoid the evils of "government in a fishbowl." *See Gulf Oil Corp. v. Schlesinger*, 465 F.Supp. 913 (E.D.Pa.1979); *Kaiser Aluminum & Chemical Corp. v. United States*, 157 F.Supp. 939, 141 Ct.Cl. 38 (1958) (Reed, J.). The privilege protects "opinions, conclusions and reasoning of government officials . . . ." *ISI Corp. v. United States*, 503 F.2d 558, 559 (9th Cir. 1974). *See generally Carl Zeiss Stiftung v. V.E.B. Carl Zeiss, Jena*, 40 F.R.D. 318 (D.D.C.1966).

■ The governmental privilege is limited in two important ways. *See Jordan v. United States Dep't of Justice*, 591 F.2d 753, 774 (D.C.Cir.1978) (en banc). The document must first be "deliberative." This qualification depends upon the familiar, if unreliable, distinction between fact and opinion. The privilege does not protect factual or investigative material, except as necessary to avoid indirect revelation of the decision-making process. *Environmental Protection Agency v. Mink*, 410 U.S. 73, 87–8 & n. 14, 93 S.Ct. 827, 836 & n. 14, 35 L.Ed.2d 119

---

**5.** *See United States v. Wahlin*, 384 F.Supp. 43, 47 (W.D.Wis.1974). "The Government's contention that defendant cannot rely on the Freedom of Information Act to obtain discovery in a *criminal* action is preposterous." (Emphasis

added.) In this case there is even less justification for the Government's position, as the lack of a pending criminal proceeding removes the danger of circumventing the strict criminal discovery rules. *See* Fed.R.Crim.P. 16.

(1973). The document must also be "predecisional." The second qualification depends upon the timing of the communication. Even opinions fall outside the privilege if they express a policy already adopted by the agency. As explained by the Supreme Court in *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 95 S.Ct. 1504, 44 L.Ed.2d 29 (1974), this limitation is necessary to prevent the government's legitimate need for confidentiality from giving rise to a vast body of secret law.

The criteria of the attorney-client privilege are wellknown and need not be repeated here. *See Barr Marine Products Co. v. Borg-Warner Corp.*, 84 F.R.D. 631 (E.D. Pa.1979); *United States v. United Shoe Machinery Corp.*, 89 F.Supp. 357 (D.Mass.1950). Attorney-client privilege complements governmental privilege when applied to a government attorney-agency client relationship. Just as governmental privilege is primarily directed at opinions, attorney-client privilege focuses upon facts; and, while governmental privilege chiefly protects statements of opinion and advice *by counsel to client*, attorney-client privilege principally shields statements of fact *by client to counsel* for the purpose of obtaining legal advice. Both privileges carry overlapping penumbrae—attorney-client privilege extends, for example, to statements of counsel to prevent direct or implied disclosure of client confidences—but their purposes are distinct and counterposed.

▉ Courts generally have accepted that attorney-client privilege applies in the governmental context,[6] while expressing apprehension at its pernicious potential in a government top-heavy with lawyers. *Cf. Kent Corp. v. NLRB*, 530 F.2d 612, 623 (5th Cir.), *cert. denied*, 429 U.S. 920, 97 S.Ct. 316, 50 L.Ed.2d 287 (1976).[7] This concern does not justify application of a different privilege to governmental attorney-client relationships. Rather, the customary and better approach is to construe the privilege narrowly to conform to its purposes. *Falcone v. IRS*, 479 F.Supp. 985, 989 (E.D.Mich. 1979). Of particular importance in this case is the settled rule that the shield of confidentiality does not extend to reports or comments on information coming from persons outside the institutional client. *See United Shoe*, 89 F.Supp. at 360. Statements of non-governmental witnesses secured in anticipation of litigation, or summaries of conferences held with such persons are not subject to the attorney-client privilege. *Hickman v. Taylor*, 329 U.S. 495, 508, 67 S.Ct. 385, 392, 91 L.Ed. 451 (1947); *United States v. Anderson*, 34 F.R.D. 518, 523 (D.Colo.1963).

## IV. DISPOSITION

The following documents, listed in chronological order, are contested:[8]

(1) 7/1/75—Special Agent's Report prepared by Special Agent Hilferty

(2) 11/7/75—letter from Regional Counsel to Department of Justice recommending criminal prosecution

(3) 4/29/77—letter from Department of Justice to Regional Counsel declining prosecution

(4) 6/1/77—letter from Intelligence Division to Regional Counsel recommending protest of the decision of the Department of Justice to decline prosecution

---

6. *See, e. g., Thill Securities Corp. v. New York Stock Exchange*, 57 F.R.D. 133 (E.D.Wis.1972); *United States v. Beatrice Foods Co.*, 52 F.R.D. 14 (D.Minn.1971); *Detroit Screwmatic Co. v. United States*, 49 F.R.D. 77 (S.D.N.Y.1970); *United States v. Anderson*, 34 F.R.D. 518 (D.Colo.1963).

7. IRS has been singled out for excoriation as "the most reluctant bureaucratic dragon in its claims of confidentiality. . . ." *Equal Employment Opportunity Comm'n v. Los Alamos Constructors, Inc.*, 382 F.Supp. 1373, 1376 (D.N.M.1974) (Winner, J.). *See also United*

*States v. San Antonio Portland Cement Co.*, 33 F.R.D. 513, 515 (W.D.Tex.1963).

8. The parties use a different scheme for identifying the documents. Document 1, as identified here, corresponds to item (a) as identified by the Government; document 2 to item (c); document 3 to item (b); document 4 to item (e); document 5 also to item (e); document 6 to item (d); document 7 to item (h); and document 8 to item (g). Documents duplicated as enclosures to other documents are to be treated in the same fashion as the original documents.

(5) 6/10/77—letter from Regional Counsel to Intelligence Division declining recommendation of protest

(6) 9/30/77—portions of Revenue Agent's Report prepared by Revenue Agent Cubbin

(7) undated—Summary for Indictment Purposes

(8) various dates—transmittal documents and administrative forms (approximately 194 pages total).

### (a) Relevance (Documents 7 and 8)

■ The claimed relevance of all of these documents is their bearing on the issue of fraud which in turn relates to plaintiff's liability for a penalty and the issue of tolling for purposes of plaintiff's statute of limitations defense to the counterclaim. This theory of relevance satisfies the requirement of Fed.R.Civ.P. 26 for all but two documents: the transmittals and forms (document 8) and the "Summary for Indictment Purposes" (document 7). What little information the 190-odd forms in document 8 contain is entirely cumulative. Document 7 consists of four pages of calculations which are largely cumulative and which have no apparent relevance to the fraud issue. I am aware that plaintiff is shooting in the dark and have therefore examined the documents with particular care. Nevertheless, the burden of establishing minimal relevance is on the requesting party and the plaintiff has not satisfied its burden so far as documents 7 and 8 are concerned. They may be withheld.[9]

### (b) Memoranda Concerning the Decision Not to Prosecute (Documents 2, 3, 4 and 5)

■ The decision of the United States Supreme Court in NLRB v. Sears, Roebuck & Co., 421 U.S. 132, 95 S.Ct. 1504, 44

L.Ed.2d 29 (1975) goes a long way toward resolving the claims of privilege with respect to these documents. In Sears, the plaintiff sought to obtain under FOIA several types of internal NLRB documents. Among these documents were "Advice in Appeals Memoranda" issued by NLRB General Counsel for the purpose of explaining to a Regional Director the decision of General Counsel not to issue a complaint in a case. The Advice and Appeals Memoranda described in Sears are functionally indistinguishable from the memorandum of the Department of Justice declining prosecution in this case. Both documents are final expressions of an agency decision not to pursue legal remedies against possibly unlawful conduct. That this case was criminal and an unfair labor practice proceeding is technically civil does not provide a meaningful basis for distinction.

Over claims of governmental and attorney-client privilege the Supreme Court held in Sears that Advice and Appeals Memoranda are not exempt under FOIA Exemption 5 and are therefore subject to FOIA's mandatory disclosure provisions. The Court concluded that because the memoranda explain legal or policy decisions already adopted, "[d]isclosure of these memoranda would not intrude on predecisional processes, and protecting them would not improve the quality of agency decisions . . . ." The Sears holding is controlling on the claims of privilege for document 3.

Sears also requires disclosure of document 5 in which Regional Counsel declined the request of the local Intelligence Division to protest the refusal to prosecute by the Department of Justice.[10] This document too represents an explanation of a final decision in a discrete phase of the decisional process and is therefore available under FOIA and not privileged under the federal rules.

---

**9.** Plaintiff also asserts cryptically that the documents are relevant to "reimbursement of business expenses and tax declarations by Plaintiff's employees." If, after reviewing other material herein ordered produced, plaintiff can describe the relevance of these documents with greater particularity, I will reconsider this part of the motion.

**10.** The possibility of such a protest does not affect the finality of the decision not to prosecute for purposes of distinguishing pre- and postdecisional documents. See Sears, 421 U.S. at 158 n. 25, 95 S.Ct. at 1520 n. 25.

▮ Documents 2 and 4, the recommendation of prosecution and the request for protest, are predecisional statements of opinion and are therefore exempt from FOIA disclosure under *Sears.* Although, unlike disclosure, *exemption* under FOIA does not control the privilege question, I conclude nevertheless that these documents are within the governmental privilege. The plaintiff's need for these documents is severely limited in that their content is available in the agents' reports discussed *infra.* The relevance of the non-cumulative remainder to plaintiff's case is slight. Balanced against this attenuated need is the Government's interest in shielding the deliberative process, which I find to be substantial after reviewing the documents. Accordingly, the Government's claim of privilege may stand as to documents 2 and 4. *See United States v. Leggett & Platt, Inc.,* 542 F.2d 655, 659 (6th Cir. 1976), *cert. denied,* 430 U.S. 945, 97 S.Ct. 1579, 51 L.Ed.2d 792 (1977).

(c) *Agents' Reports (Documents 1 and 6)*

▮ The two reports claimed to be privileged, documents 1 and 6, stand on equal footing. Both are internal, largely investigative reports of *factual* matter obtained from *non-governmental* potential witnesses. As such, the reports are not protected under either attorney-client or governmental privilege. There are several scattered statements of opinion in these reports which are privileged. These may be redacted before the documents are produced. The Government has already performed this task for the Cubbin report, but not for the Hilferty report. As for the Cubbin report, I approve of the Government's proposed redaction with the exception of ¶ 2 of page 3 pertaining to the controversy over the decision not to prosecute which must be released. As for the Hilferty report, the Government may withhold ¶ 3 of text on page 7 and all that portion on pages 13 and 14 headed "Conclusions and Recommendations." The remainder of the report must be produced.

Order accordingly.